IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3295-FL

| | |
|---|---|
| SAMUEL R. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| NURSE MARLA MAGANA, DR. | ) |
| ROBERT OWENS, | ) |
| SUPERINTENDENT DENNIS | ) |
| DANIELS, and | ) |
| DR. ELIZABETH BYRD, | ) |
| | ) |
| Defendants. | ) |

The matter comes before the court on defendants' respective motions to dismiss (DE 70, 76, 89). In this posture, the issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motions.

**STATEMENT OF THE CASE**

On December 2, 2013, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 naming Superintendent Dennis Daniels ("Daniels"), Nurse Marla Magana ("Magana"), and Dr. Robert Owens ("Owens") as defendants in this action. Plaintiff alleged that defendants Magana and Owens acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff also alleged claims against Daniels arising out of his participation in the grievance process and based upon the theory of respondeat superior. On July 17, 2014, the court conducted a frivolity review and dismissed

plaintiff's action against defendant Daniels, but allowed plaintiff to proceed with his Eighth Amendment claim against defendants Magana and Owens.

On September 18, 2014, defendant Owens filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was fully briefed. Plaintiff subsequently filed a motion for summary judgment, a motion for injunctive relief, a supplemental motion for injunctive relief, two motions to amend his complaint, motion for abeyance, motion for entry of default, "emergency motion of disclosure and declaration," motion to withdraw motion for abeyance, as well as various miscellaneous filings. In the interim, the North Carolina Attorney General filed a motion for an extension of time to file an answer on behalf of defendant Magana.

On April 15, 2015, the court entered an order construing plaintiff's motion for injunctive relief and supplemental motion for injunctive relief as requests for a temporary restraining order, and denied the motions. The court also granted the attorney general's motion for an extension of time to file an answer on behalf of Magana and denied as moot plaintiff's motion for entry of default. The court construed plaintiff's pleading captioned "emergency motion of disclosure and declaration," as another motion to amend. The court granted plaintiff's first motion to amend as of right, but denied as moot plaintiff's remaining motions to amend. The court determined that plaintiff's pleadings were unclear and directed him to file one amended complaint, which the court notified plaintiff would be construed as the complaint in its entirety. Because the court directed plaintiff to file one amended complaint, the court denied without prejudice defendant Owens' motion to dismiss. Finally, the court granted plaintiff's motion to withdraw his motion for abeyance and denied as moot plaintiff's motion for abeyance.

2

On April 27, 2015, plaintiff filed a proposed amended complaint. Plaintiff next filed a motion to appoint counsel. On May 26, 2015, defendant Owens filed a motion for a protective order, which was fully briefed. On June 11, 2015, the court entered an order denying plaintiff's motion to appoint counsel. The court also granted plaintiff's motion to amend, and directed the clerk of court to add Elizabeth Byrd ("Byrd") as a defendant. As for Owens' motion for a protective order, the court held the motion in abeyance for 30 days to permit defendant Owens the opportunity to raise the affirmative defense of qualified immunity through the appropriate motion.

On July 13, 2015, Owens filed a motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed. Owens subsequently filed a second motion for a protective order and plaintiff filed a motion for a temporary restraining order. On July 31, 2015, the court entered an order granting Owens' second motion for a protective order and denying as moot Owens' first motion for a protective order. The court then entered an order denying plaintiff's motion for a temporary restraining order.

In the interim, defendant Magana filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed. On August 19, 2105, plaintiff filed a motion to amend in which he raised a claim for retaliation and amended his demand for relief. The motion was fully briefed. Defendant Byrd next filed a motion to dismiss pursuant to Rule 12(b)(6) arguing both that plaintiff failed to exhaust his administrative remedies prior to filing this action and that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed. Plaintiff filed a motion for a protective order on September 8, 2015.

3

On November 12, 2015, the court entered an order granting plaintiff's motion to amend, but dismissing plaintiff's retaliation claim without prejudice. The court allowed plaintiff to proceed with his amended demand for relief. Finally, the court denied plaintiff's motion for a protective order.

## STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, plaintiff's allegations may be summarized as follows. Plaintiff's claims involve the medical care defendants provided at Maury Correctional Institution ("Maury") for the alleged injuries plaintiff sustained on April 24, 2013, at Polk Correctional Institution ("Polk") when his head was "forcefully and repeatedly slammed against the wall by a corrections officer" resulting in a "concussion, dizziness, persistent, unabated, excruciating pain." (Am. Compl. (DE 52), pp. 3-4.) After the alleged use of excessive force, plaintiff was transferred from Polk to Central Prison so that Central Prison medical staff could perform cranium and spinal "c-scans" pursuant to the orders of Dr. Joseph Lightsey at Polk. (Id.) "The cranium c-scan test and results mysteriously vanished from plaintiff's medical file[, which was] [a] result of a collusion and conspiracy by officials at Polk[] to stymie plaintiff's lawsuit." (Id. p. 4.)

At some point, plaintiff was transferred to Maury, where plaintiff received treatment for his injuries from approximately October 8, 2013, through December 31, 2014, when he was transferred from Maury. (Am. Compl. (DE 52), pp. 1, 8.) Plaintiff first attended a sick call appointment at Maury, which was related to this incident, on October 8, 2013. Defendant Magana informed plaintiff that she would schedule an appointment with defendant Owens to review the results of his May 30, 2013, cranium and spinal c-scans, which were taken at Central Prison. (Id. pp. 1-2.)

4

During his appointment with Magana, plaintiff complained of "excruciating pain on the left side of his head, neck, and spine." (Id. p.2.) Plaintiff informed Magana that previously prescribed medications, Naproxen and Acetaminophen, were ineffective and requested an alternative medication. (Id.) Plaintiff never saw defendant Owens at Maury and was not prescribed an alternative medication. (Id.)

On November 25, 2014, plaintiff attended a routine medical examination with defendant Byrd, a physician assistant at Maury. (Id. p. 5.) Plaintiff complained to Byrd about the ineffectiveness of the medications Naproxen and Acetaminophen. (Id.) In response, defendant Byrd prescribed Tegretol and Meloxicam for pain and ordered electromagnetic radiation ("x-ray") testing of plaintiff's cranium, spine, and right pinky finger. (Id. pp. 5-6.) The x-rays were performed on the same date. (Id.)

Plaintiff later complained to Nurse Privette that the newly prescribed medications were "woefully inadequate" for his pain. (Id. p. 6.) Plaintiff asked Nurse Privette to request a follow-up examination with Byrd. (Id.) The follow-up appointment was not scheduled. (Id.) When plaintiff encountered Nurse Privette at the medication window later and inquired as to why he was not seen by defendant Byrd, Nurse Privette replied: "I delivered the message but she said she wasn't going to conduct a follow-up. In fact, she said that the only thing that could help [plaintiff] is an operation of spinal fusion." (Id. pp. 6, 7.) Defendant Byrd did not schedule an appointment with a surgeon or specialist. (Id.) Defendant Byrd did not further alter plaintiff's prescribed pain medications. (Id.)

On December 13, 2014, plaintiff filed a grievance at Maury complaining about his medical care. (Couch Aff. Ex. C, p. 1.) On December 31, 2014, plaintiff was transferred from Maury to Bertie Correctional Institution ("Bertie"). (Am. Compl. (DE 52), p. 8.) Plaintiff continued to

experience pain that "later culminated in a suicide attempt at Bertie [] on [January 2, 2015]." (Id. p. 7.)

On February 23, 2015, prison officials responded to plaintiff's December 13, 2014, grievance and stated as follows:

> An investigation at Maury [], including a review of a statement received from M. Magana, RN Lead Nurse reveals that inmate was scheduled for a PULHEAT assessment on 11/25/14 with provider. During this visit inmate complained of "severe neck pain and righ[t] hand 5th digit catching" no complaints of head pain were voiced. Orders were written for x-rays of c-spine and of right hand, a new prescription for Meloxicam 15 mg per day and Tegretol 200mg twice a day was initiated. On 12/1/14 x-ray results were reviewed by provider and communication note was sent to inmate informing him of his results. UR request has been submitted to request an MRI of spine. At this point inmates complaints and pain has been addressed by provider. . . . .

(Couch Aff. Ex. C, p. 6.) Plaintiff completed his step three grievance appeal on April 27, 2015. (Id. p. 1.)

Plaintiff states that a magnetic resonance imaging ("MRI") test of his spine was scheduled at Central Prison subsequent to the completion of his grievance process. (Am. Compl. (DE 52), p. 9.) "When plaintiff was informed that there was [not] a MRI of his cranium scheduled with the spinal MRI, he overtly refused the spinal MRI because it was an incomplete testing procedure calculated to hide the severity of his cranium or head lesions and he was transported back to Marion []." (Id. p. 10.)

Finally, plaintiff states that "medical personnel of the division of prisons have abruptly switched and discontinued plaintiff's medications (effective ones) substituting them with woefully inadequate placebos in an attempt to downgrade his injuries and the severity of his condition." (Id. p. 13.) Plaintiff also states that his physical therapy has been abruptly discontinued and that his

6

surgery scheduled for January 2015, "remains in limbo." (Id.) Plaintiff states that the nerve damage that his recently developed nerve damage has been deliberately ignored.

## DISCUSSION

A.     Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B.  Analysis

  1.  Civil Conspiracy

Plaintiff alleges that defendants conspired to "stymie" his lawsuit and suggests that defendants had some involvement when plaintiff's cranium c-scan test results allegedly "mysteriously vanished from plaintiff's medical file." (Am. Compl. (DE 52), p. 4.) Plaintiff also suggests that defendants Magana, Owens, and Byrd engaged in a conspiracy to falsify the precise etiology and severity of the injuries he received during the alleged assault at Polk.

The Fourth Circuit has stated that "the law is well settled that to prove a section [42 U.S.C. §] 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). "To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." See Wiggins v. 11Kew Garden Court, 497 F. App'x 262, 264 (4th Cir. 2012)); see also, Miller v. DeMarino, No. 1:01CV183, 2002 WL 32096597, at *1 (N.D.W.Va. Apr. 24, 2002) (finding that naked assertions of a conspiracy are not sufficient to support an action pursuant to 42 U.S.C. § 1983), aff'd, 45 F. App'x 292 (4th Cir. 2002).

The conspiracy alleged by plaintiff fails to meet the plausibility standard as set forth in Twombly and Iqbal. Although the court construes all facts in the light most favorable to plaintiff, it does not and can not consider conclusory allegations of conspiracy as presented here. Notably missing from plaintiff's allegations are any facts that, accepted as true, create an inference that the alleged conspiracy existed or that defendants Magana, Owens, or Byrd were involved. Rather, as stated, plaintiff relies exclusively upon his conclusory allegations that defendants engaged in a conspiracy to somehow thwart his lawsuit and alludes to their potential involvement, without any

8

detailed factual support, in an alleged mysterious disappearance of his medical records. Therefore, the defendants' motion to dismiss plaintiff's claim for civil conspiracy is GRANTED.[1]

    2.       Eighth Amendment Claim

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prove such a claim, a prisoner "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). Deliberate indifference exists where prison officials know that inmates "face a

---

[1] Plaintiff suggests Dr. Joseph Lightsey was involved with the alleged conspiracy. The court notes that plaintiff did not name Dr. Joseph Lightsey as a defendant in this action.

substantial risk of serious harm" and disregard that risk "by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

In cases involving the denial or delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. See, e.g., Sosebee v. Murphy, 797 F.2d 179, 182–83 (4th Cir. 1986). A prisoner, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–319 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. See, e.g., Estelle, 429 U.S. at 105–06.

>	a.	Defendant Owens

Beginning with plaintiff's Eighth Amendment claim against defendant Owens, plaintiff alleges that defendant Magana informed plaintiff at a sick call appointment that he would "be scheduled for an appointment with Dr. Robert Owens for a review of his cranium and spinal c-scans taken at central prison on [May 30, 2013]." (Am. Compl. (DE 52), p. 2.) Plaintiff further states in his amended complaint that he did not attend an appointment with defendant Owens. (Id.). Plaintiff, in fact, makes no allegation suggesting that Owens was even aware of plaintiff's complaints. Rather, plaintiff makes conclusory allegations that defendant Owens "failed to discharge [his] duties[,]"and left plaintiff at the mercy of brutal, unabated, excruciating pain and a condition that required a surgeon's attention." (Id. p. 3.)

Aside from his conclusory allegations, which are insufficient to state a constitutional claim, plaintiff has not made any allegations that defendant Owens acted with any intent to cause plaintiff harm. See Iqbal, 556 U.S. at 676 (stating conclusory allegations are "not entitled to be assumed true"); White v. White, 886 F.2d 721, 724 (4th Cir.1989) (pro se litigant complaints must be liberally

10

construed; however, a minimum level of factual support is required). Nor has plaintiff made any allegation to suggest that Owens had any personal involvement with plaintiff's medical care. Based upon the foregoing, plaintiff fails to state an Eighth Amendment claim against Owens.[2]

   b. Defendant Magana

Plaintiff's complaint against defendant Magana appears to arise out of plaintiff's allegation that defendant Magana's failed to schedule plaintiff to see defendant Owens after the October 8, 2013, appointment. (Am. Compl. (DE 52), p. 2.) Although plaintiff was not scheduled for an appointment with defendant Owens, he admits that he attended a medical appointment with defendant Byrd on November 25, 2014. (Id. p. 5.) Plaintiff does not allege any facts to suggest that defendant Magana intentionally delayed or interfered with plaintiff's referral to see a medical provider. Accordingly, at most, defendant Magana's actions constituted negligence, which is insufficient to establish a constitutional violation. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard-a showing of mere negligence will not meet it.").

Additionally, to the extent plaintiff contends in his amended complaint that defendant Magana violated the Eighth Amendment by referring plaintiff to defendant Byrd, rather than defendant Owens, such claim amounts to nothing more than a disagreement over the proper course of treatment. See e.g., Russell, 528 F.2d at 319. It is well settled that such a disagreement does not

---

[2] To the extent plaintiff's action could be construed as a negligence claim against Owens, plaintiff may not bring such claim in this court. See Stewart v. North Carolina, 393 F.3d 484, 490 (4th Cir.2005) (noting that North Carolina may be sued for negligence before the North Carolina Industrial Commission but that North Carolina has not consented to suit in its own courts for claims of gross negligence or intentional torts); Hooper v. North Carolina, 379 F. Supp.2d 804, 812–13 (M.D.N.C.2005) (explaining that "the State of North Carolina has not waived its sovereign immunity regarding any tort claims other than claims of negligence brought before the Industrial Commission under Article 31 of Chapter 143 of the Tort Claims Act").

11

constitute an Eighth Amendment claim. See Wright, 766 F.2d at 850. Based upon the foregoing, plaintiff failed to state a claim against defendant Magana.

   c. Defendant Byrd

Plaintiff asserts that defendant Byrd acted with deliberate indifference to his serious medical needs because she failed to prescribe him with adequate pain medications or to refer him to a specialist. Plaintiff saw defendant Byrd on November 25, 2014, and she prescribed him pain medication and ordered x-rays of plaintiff's cranium, spine, and right pinky. (Am. Compl. (DE 52), p. 5-6.) After receiving the x-ray results, defendant Byrd ordered an MRI of plaintiff's spine. (Id. p. 9.) Plaintiff, however, refused the spinal MRI stating that "it was an incomplete testing procedure calculated to hide the severity of his cranium or head lesion." (Id. p. 10.) From plaintiff's own allegations, the record reflects that defendant Byrd provided plaintiff with treatment in response to plaintiff's medical complaints, and that plaintiff disagrees with defendant Byrd's treatment decisions. Such a disagreement does not constitute deliberate indifference in violation of the Eighth Amendment. See, e.g., Wright, 766 F.2d at 849. Additionally, to the extent plaintiff alleges that Byrd's treatment of plaintiff may not have been effective, this also does not give rise to a constitutional violation. See, e.g., Russell, 528 F.2d at 319; see also, Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (finding that negligent acts are not sufficient to establish a constitutional violation).

Finally, to the extent plaintiff alleges that defendant Byrd refused to schedule a follow-up appointment within two weeks of his November 25, 2014, appointment, he again fails to state a claim. According to plaintiff, defendant Byrd did not feel alternative medications would relieve plaintiff's pain because defendant Byrd believed plaintiff, instead, needed surgery. ((DE 52), p. 7.)

12

As stated by plaintiff, defendant Byrd was in the process of conducting and scheduling diagnostic testing for plaintiff[3] up until the date plaintiff was transferred from Maury, and out of defendant Byrd's care, on December 31, 2014. Plaintiff's allegations do not reflect that defendant Byrd knew of and disregarded any known risk of harm. Rather, plaintiff's own allegations provide that defendant Byrd was providing plaintiff ongoing medical care. Moreover, plaintiff's requests for particular medications or to see specialists, also amount to nothing more than a disagreement over the proper course of treatment, and such disagreement does not constitute an Eighth Amendment claim. See Wright, 766 F.2d at 850. Because plaintiff failed to state a constitutional violation with respect to any defendant, defendants are entitled to qualified immunity, and the respective motions to dismiss are GRANTED.[4]

    3.    Post-Maury Treatment

Plaintiff complains about medical treatment he received after he was transferred from Maury. Plaintiff's complaints include that medical staff at Central Prison "switched and discontinued plaintiff's medications (effective ones) substituting them with woefully inadequate placebos in an attempt to downgrade his injuries." (Am. Compl. (DE 52), p. 13.) Plaintiff also complains that his physical therapy has been discontinued and that his surgical appointment is in "limbo." (Id.) Plaintiff, contends that he now experiences neurological issues. (Id.; (DE 95), p. 10.) Plaintiff, however, does not allege that defendants Magana, Owens, or Byrd provided him any treatment

---

[3] Plaintiff refused to attend an MRI scheduled by Byrd. (Am. Compl. (DE 52), p. 10.)

[4] The court alternatively finds that plaintiff's claim against Byrd should be dismissed because plaintiff failed to exhaust his administrative remedies for this claim prior to filing this action. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 83-85 (2006); Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). To the extent plaintiff's action against defendant Byrd is dismissed on this ground, the court construes defendant Byrd's motion as a motion for summary judgment, and the claim is DISMISSED without prejudice.

13

subsequent to his transfer from Maury. Further, plaintiff admits that he is pursuing a separate action against defendant Dr. Newman and the Utilization Review Board which is related to his medical treatment at Central Prison. See Jackson v. Newman, No. 5:15-CT-3041-F (E.D.N.C. Feb. 18, 2015). Because plaintiff's post-Maury allegations regarding his medical care do not involve the defendants in this action, any claims arising out of such conduct is DISMISSED without prejudice.

    4.    Retaliation

Plaintiff asserts a claim of retaliation in his amended complaint. In support, plaintiff asserts that he filed a grievance at Maury regarding the medical care Byrd provided and that he threatened to file a lawsuit in his grievance. Plaintiff states that, instead of responding to his grievance, prison officials abruptly transferred him to Bertie.

Claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, in a retaliation action alleging First Amendment violations, a plaintiff must establish that the conduct complained of adversely affected his constitutional rights. ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). Additionally, a plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74–75.

As an initial matter, plaintiff's transfer from Maury to Bertie did not violate plaintiff's constitutional rights because an inmate has no constitutional right to choose his place of incarceration. See Meachum v. Fanno, 427 U.S. 215, 225 (1976); Johnson v. Ozmint, 456 F. Supp.

14

2d 688, 695 (D.S.C. 2006) (citing Ajaj v. Smith, 108 F. App'x 743, 744 (4th Cir. 2004) (per curiam)). Further, plaintiff's only factual support for his retaliation claim is his conclusory allegations that the decision to transfer plaintiff from Maury to Bertie was made in retaliation for filing the instant lawsuit. Plaintiff provides no facts to suggest that the two incidents were related. These conclusory allegations of retaliation are insufficient to allege a constitutional violation. Adams, 40 F.3d at 74. Thus, plaintiff failed to state a retaliation claim.

## CONCLUSION

Based upon the foregoing, defendants' respective motions to dismiss (DE 70, 76, 89) are GRANTED. Plaintiff's post-Maury allegations regarding his medical care are DISMISSED without prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 24th day of November, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge